UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| IN RE: DEPUY ORTHOPAEDICS, INC. PINNACLE HIP IMPLANT PRODUCT LIABILITY LITIGATION | ) ) ) )     MDL No. 2244 |
| This Document Relates to: ALL PENDING CASES IN WHICH PLAINTIFFS HAVE REQUESTED SALES REPRESENTATIVE DEPOSITIONS (Cases Listed on Attached Schedule A) | ) ) ) ) ) ) ) )     Honorable Ed Kinkeade |

### DEFENDANTS' MOTION FOR EXPEDITED RULING PROHIBITING THE TAKING OF SALES REPRESENTATIVE DEPOSITIONS BEFORE THE COMPLETION OF TREATING SURGEON DEPOSITIONS

The clear import of the Court's September Scheduling Order is that the parties should focus their efforts on deposing plaintiffs and treating surgeons and completing expert discovery. Nonetheless, plaintiffs in various cases seek to upend that schedule by prioritizing depositions of the sales representatives who met with their surgeons in their individual cases. Plaintiffs argue that they need to know what sales representative told their doctors about the Pinnacle Cup System, but that information can be obtained by questioning the treating doctors themselves. Moreover, plaintiffs' warning-based claims will turn on what (if anything) *their doctors* relied on in selecting the Pinnacle Cup System for each plaintiff. In the unlikely event any of the doctors were to testify that they either relied on something communicated by a sales representative or were otherwise affected by a sales representative's presence in the operating room, limited depositions of such individuals might be appropriate. Because the substance of any treating surgeon testimony could render sales representative evidence irrelevant, plaintiffs' categorial demand for sales representative depositions in all cases is premature and improper.

Defendants respectfully seek expedited resolution of their motion given the imminence of depositions in *Gertie Campbell v. DePuy Orthopaedics, Inc.*, which plaintiffs have unilaterally noticed for this upcoming Monday, October 24.

## BACKGROUND

Over the course of more than seven years, defendants have undertaken reasonable and diligent efforts to collect, review, and produce ***millions of pages of documents*** pertaining to the Pinnacle Cup System, including with regard to such subjects as research and development, regulatory, manufacturing, labeling, marketing, sales distribution, product communications, and pharmacovigilance ("General Document Production"). Defendants' custodial collections encompassed ***hundreds*** of different current and former employees, including numerous pages of documents and data from different sales and marketing custodians. The General Document Production – which has been available for a number of years – also included communications with individual surgeons; general product communications; all final Instructions for Use, Surgical Technique Brochures and Technical Monographs from product launch through and including last date of sale; sales training materials from product launch through and including the last date of sale; and numerous distributor and sales representative custodial files.

In addition to this General Document Production, defendants have produced, or are in the process of producing, case-specific Defendant Fact Sheets. The Defendant Fact Sheets include the complaint file for the plaintiff, the design history file for the device implanted into the plaintiff, communications regarding the plaintiff, the identity of sales representative(s) who are referenced in the complaint file, as well as other relevant information.

On September 16, 2022, the Court issued scheduling orders in certain pending cases in this litigation setting forth pre-trial deadlines, including that all case-specific discovery be

completed by December 9, and that all dispositive motions be filed by December 16. (*See* Order at 2.) It was defendants' understanding that the Court intended to focus the parties on the completion of plaintiff and treating surgeon depositions, which are required for expert reports and depositions. Nonetheless, the plaintiffs in a number of cases asked to take the depositions of individual sales representatives. For example, on October 4, the plaintiffs in *Gertie Campbell v. DePuy Orthopaedics, Inc.*, served subpoenas on Medical Ventures, Inc. and Carter Baker, for deposition testimony on October 24. (*See* Subpoena to Carter Baker to Testify at a Deposition, *Gertie Campbell v. DePuy Orthopaedics, Inc.* (attached as Ex. 1) (Appendix pp. 1-6); Subpoena to Medical Ventures, Inc. to Testify at a Deposition, *Gertie Campbell v. DePuy Orthopaedics, Inc.* (attached as Ex. 2) (Appendix pp. 7-13).) Defendants have consistently responded that such deposition requests should not be considered until after the treating doctors have themselves been deposed, an exercise that has only just begun.

On October 9, defendants communicated their position to Special Master Stanton and requested a conference with the Court to resolve this dispute regarding sales representative depositions. (*See* Email from T. Bruksch to Judge Stanton, Oct. 9, 2022 (attached as Ex. 3) (Appendix pp. 14-15).) After various other plaintiffs propounded similar requests on defendants, counsel representing certain of the plaintiffs responded to defendants' October 9 email, stating that, in other metal-on-meal hip cases outside the Pinnacle litigation, "the testimony of the sales representatives has been critical to both plaintiff's failure to warn claims as well as their claims for fraudulent concealment. They are direct witnesses of the surgeries that are at issue in this case and are responsible for reporting adverse events observed during revision surgeries (like metalosis [sic] or premature wear) to DePuy." (Email from S. Talley to Judge Stanton, Oct. 10, 2022 ("Talley Email") (attached as Ex. 4) (Appendix p. 16).) Various lawyers representing other

3

plaintiffs indicated that they "concur" with this position.  (*See, e.g.*, Email from D. Byrne to Judge Stanton, Oct. 10, 2022 (attached as Ex. 5) (Appendix p. 17); Email from E. Thornsbury to Judge Stanton, Oct. 11, 2022 (attached as Ex. 6) (Appendix p. 18); Email from M. Sulkin to Judge Stanton, Oct. 10, 2022 ("Sulkin Email") (attached as Ex. 7) (Appendix p. 19).)  This motion follows.

## ARGUMENT

The "scope of discovery" pursuant to Federal Rule 26 "is not unlimited." *Billitteri v. Sec. Am., Inc.*, No. 3:09-cv-1568-F, 2011 WL 13228268, at *1 (N.D. Tex. Apr. 4, 2011) (citation omitted); *see also Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999) ("Although the scope of discovery under the Federal Rules is unquestionably broad, this right is not unlimited and may be circumscribed.").  In particular, discovery must be "relevant" and "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  The Federal Rules of Civil Procedure also "expressly allow a district court to use its discretion and deny discovery requests if the material sought is 'unreasonably cumulative.'" *Bayer AG*, 173 F.3d at 191 (citation omitted); *Cashman Equip. Corp. v. Rozel Operating Co.*, No. 3:08-cv-0363, 2012 WL 2054318, at *3 (M.D. La. June 6, 2012) (denying discovery request because "Rule 26(b)(2)(C)([i]) . . . directs courts to limit discovery that is 'unreasonably cumulative or duplicative'").  "The party seeking discovery has the burden of showing that the information sought is relevant to the subject matter of the action" and discoverable. *Anderson v. Buena Bd. of Educ.*, No. 17-06816(JS), 2019 WL 1262647, at *2 (D.N.J. Mar. 19, 2019).

Courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 593 n.13 (2007) (Stevens, J., dissenting) ("Rule 26 confers broad

discretion to control the combination of interrogatories, requests for admissions, production requests, and depositions permitted in a given case; the sequence in which such discovery devices may be deployed; and the limitations imposed upon them."). In exercising that discretion, one court held that discovery from a drug manufacturer regarding its own "[p]romotional [a]ctivities" could not proceed until after the depositions of the prescribing physicians had taken place, and only if "the [p]hysicians testifie[d] that a decision to prescribe OxyContin to any of the plaintiffs resulted from, or was influenced by, any Abbott promotional activity, document, seminar, or meeting." Order at 2, *McCaulley v. Purdue Pharma, L.P.* No. 2:01CV00080 (W.D. Va. Oct. 2, 2002) (attached as Ex. 8) (Appendix p. 22).

The same logic applies with even greater force here given that plaintiffs are seeking depositions of peripheral ***third-party*** sales representatives who, at most, provided ***DePuy***-generated information that has already been the subject of ample discovery throughout the MDL proceeding. *See, e.g.*, *Hall v. OrthoMidwest, Inc.*, 541 F. Supp. 3d 802, 811 (N.D. Ohio 2021) (there was "no evidence any [named sales representative] made independent representations," but rather "the representations . . . came from DePuy"; sales representative did "nothing more than pass along the manufacturer's statements"); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine)*, No. 03-20765 et al., 2004 WL 1824357, at *4 (E.D. Pa. Aug. 12, 2004) (sales representatives had "no specialized medical or pharmacological education other than training provided by [the defendant manufacturer]" and only "conveyed during their visits with physicians [information that] was derived exclusively from information provided by [the defendant manufacturer]"). That is presumably why sales representative testimony has ***not*** been a focus of this MDL proceeding, and why multiple bellwether cases were tried to verdict without such testimony. *See generally Paoli v. DePuy Orthopaedics, Inc.*, No. 3:12-cv-04975-K (N.D.

5

Tex.); *Aoki v. DePuy Orthopaedics, Inc.*, No. 3:13-cv-01071-K (N.D. Tex.); *Andrews v. DePuy Orthopaedics, Inc.*, No. 3:15-cv-03484-K (N.D. Tex.).[1]

In any event, depositions of sales representatives could not possibly lead to relevant, admissible evidence absent testimony from a particular ***treating surgeon*** that he or she relied on a sales representative in choosing to implant the Pinnacle Cup System into a specific plaintiff. *See, e.g.*, *Okuda v. Wyeth*, No. 1:04-cv-80 DN, 2012 WL 12337860, at *2 (D. Utah July 24, 2012) (granting motion in limine precluding testimony or evidence regarding a sales representative "who did not call on or influence [p]lainitff's prescribers during the relevant time"); *Cross v. Wyeth Pharms., Inc.*, No. 8:06-cv-429-T-23AEP, 2011 WL 2517211, at *4 (M.D. Fla. June 23, 2011) (excluding evidence of sales or marketing practices as "impertinent and irrelevant to the plaintiffs' claim (i.e., the adequacy of the warning on each product)" where "neither the plaintiff nor her physician asserts reliance on the marketing material"); *Cooper v. Bristol-Myers Squibb Co.*, No. 07-885 (FLW), 2013 WL 85291, at *3, *7 & n.14 (D.N.J. Jan. 7, 2013) (granting summary judgment on claim for failure to warn and noting that any sales representative testimony would be "irrelevant" as it did not bear on physician prescribing decision; "it is the testimony of the prescribing physician around which my proximate cause analysis must center"); *Miller v. Pfizer Inc.*, 196 F. Supp. 2d 1095, 1123 n.92 (D. Kan. 2002) (excluding marketing materials not relied on by prescriber "because they were irrelevant and unfairly prejudicial"), *aff'd*, 356 F.3d 1326 (10th Cir. 2004).

In short, the testimony of the treating surgeons will dictate what (if any) relevance sales representatives have to plaintiffs' claims in these cases. As a result, sales representative depositions should not occur until the treater depositions have concluded and plaintiffs have

---

[1] Although one sales representative, John Baldwin, was deposed in connection with the *Alicea* bellwether trial, he ultimately did not testify at trial, nor was his deposition testimony played at that trial.

demonstrated a legitimate need to depose specific sales representatives based on the particulars of a treating physician's testimony.

Plaintiffs have nonetheless argued that they should be allowed to depose sales representatives without condition because: (1) the testimony of the sales representatives would be "critical" to plaintiffs' claims for failure to warn and fraudulent concealment (*see, e.g.*, Talley Email (Appendix p. 16)); and (2) sales representatives were "conduits of information" who provided marketing materials from DePuy to the surgeons and treaters (*see, e.g.*, Sulkin Email (Appendix p. 19)) and reported adverse events to DePuy (*see, e.g.*, Email from M. Cowgill to Judge Stanton, Oct. 11, 2022 ("Cowgill Email") (attached as Ex. 9) (Appendix p. 24)).  None of these arguments has any merit.

***First***, there is no truth to plaintiffs' argument that the testimony of sales representatives is "critical" to their warning- and fraud-based claims.  As the Fifth Circuit made clear in *Aoki*, these claims turn on "subjective testimony by [the plaintiff's] ***treating physician***" as to what he or she relied upon in deciding to select the Pinnacle Cup System for the plaintiff's surgery.  *See In re DePuy Orthopaedics, Inc.*, 888 F.3d 753, 775 (5th Cir. 2018) (emphasis added); *see also Porterfield v. Ethicon, Inc.*, 183 F.3d 464, 468 (5th Cir. 1999) (per curiam) (explaining that claim for failure to warn failed under Texas law where "the surgeon who performed [the plaintiff's] hernia surgery using the mesh[] testified that at no time prior to [the plaintiff's] surgery had he read Ethicon's package insert or any other Ethicon literature").  Although *Aoki* involved Texas law, the laws at issue in the pending cases similarly focus on the testimony of the plaintiff's treating physician.  *See, e.g.*, *Motus v. Pfizer Inc.*, 196 F. Supp. 2d 984, 996 (C.D. Cal. 2001) (California law) (holding that plaintiff's claims for failure to warn, breach of warranty and fraud failed as a matter of law because treating physician "did not rely either on any statements Pfizer

7

representatives made to him nor any written materials they may have provided to him"); *McDowell v. Eli Lilly & Co.*, 58 F. Supp. 3d 391, 407 (S.D.N.Y. 2014) (New York law) (granting manufacturer summary judgment where doctor "expressly testified that she was not misled in the way [p]laintiffs suggest" as to the rate of discontinuation symptoms associated with the drug); *Curtin v. Ethicon, Inc.*, No. 20-cv-3172-WJM-STV, 2021 WL 825986, at *4 (D. Colo. Mar. 4, 2021) (Colorado law) ("To survive a motion for summary judgment in a medical failure to warn case, then, a plaintiff must demonstrate both the inadequacy of the warning given to the physician ***and*** that this inadequacy caused the ***physician*** to prescribe the device at issue.") (second emphasis added); *Heide v. Ethicon, Inc.*, No. 4:20CV160, 2020 WL 1322835, at *5 (N.D. Ohio Mar. 20, 2020) (Ohio law) ("Plaintiff must also show that her ***physician*** would have acted differently had he been given an adequate warning.") (emphasis added). Needless to say, no amount of testimony from a sales representative can speak to what plaintiffs' treating surgeons themselves relied on in deciding to implant the Pinnacle Cup System into the plaintiffs.

Moreover, sales representative evidence would be even more unnecessary in cases where a plaintiff's treating surgeon was independently aware of the purported risks (e.g., metal wear debris) that are the basis of the warning- and fraud-based claims in this litigation. *See, e.g.*, *Oden v. Bos. Sci. Corp.*, 330 F. Supp. 3d 877, 893 (E.D.N.Y. 2018) (New York law) (dismissing claims for failure to warn because, *inter alia*, "[p]laintiff has pleaded no facts to suggest that his physician did not possess independent knowledge about the risks associated with use of the Greenfield Filter separate and apart from . . . any such warnings"); *Cox v. DePuy Motech, Inc.*, No. 95-CV-3848-L(JA), 2000 WL 1160486, at *8 (S.D. Cal. Mar. 29, 2000) (California law) (granting summary judgment on claim for failure to warn where "[i]t is undisputed that Dr. McKinley knew of the risks associated with using a spinal pedicle device and provided that

information to plaintiff in the Operative Consent form"). In such a case, "any representations made by the defendants' sales representatives are *irrelevant*" because they could not have proximately caused the doctor to prescribe the purportedly defective product. *Small v. Amgen, Inc.*, 134 F. Supp. 3d 1358, 1372 (M.D. Fla. 2015) ("[T]he failure of the manufacturer to provide the physician with an adequate warning is not the proximate cause of a patient's injury if the prescribing physician had independent knowledge of the risk that an adequate warning should have communicated.") (citation omitted), *aff'd*, 723 F. App'x 722 (11th Cir. 2018) (per curiam).

The same principles apply here. Plaintiffs will have the opportunity to depose each treating surgeon about what information he or she was exposed to regarding the Pinnacle Cup System, and what information the doctor ultimately considered in evaluating the risks and benefits of the Pinnacle Cup System. Any testimony from a sales representative attempting to divine what a treater knew or did not know about the purported risks surrounding the device would be nothing more than rank speculation. And requiring the parties to participate in depositions questioning sales representative about what (if any) information the representatives conveyed to doctors would be an utter waste of time unless and until those physicians testify that such information had some bearing on their decision-making process.

*Second*, plaintiffs assert that they are entitled to sales representative depositions because sales representatives were "conduits of information" who provided marketing materials from DePuy to the surgeons (*see, e.g.*, Sulkin Email (Appendix p. 19)) and reported adverse events to DePuy (*see, e.g.*, Cowgill Email (Appendix p. 24)). But any materials that were provided by a sales representative would have "c[ome] from DePuy," *Hall*, 541 F. Supp. 3d at 811 – and that information has already been the subject of extensive discovery during the course of the MDL proceeding. Not only have defendants produced documents related to the subject of marketing,

but the DePuy employees with relevant knowledge about this topic have already been deposed in this litigation. Indeed, seven DePuy marketing employees have provided deposition testimony over the span of nine days on marketing topics (in addition to ample testimony provided on promotion-related subjects at various trials).

The same is true with respect to adverse event reporting, which (just like marketing), has been the subject of substantial discovery in this MDL. Defendants have already collected and produced thousands of complaint files containing adverse event reports related to the Pinnacle Cup System. Defendants are also in the process of producing complaint files for each individual plaintiff as part of the Defendants' Fact Sheet. And beyond actual complaint files themselves, defendants have previously produced the custodial files of those DePuy employees who actually had responsibility for maintaining the complaint files – i.e., the people who would have been communicating with sales representatives regarding adverse event reporting. As a result, deposing individual sales representatives would not break any new ground on this topic; plaintiffs have more than they need to litigate the adequacy of adverse event reporting regarding the Pinnacle Cup System.

## **CONCLUSION**

For all of these reasons, the Court should prohibit plaintiffs from deposing individual sales representatives until after the relevant treating surgeon depositions have been taken, and plaintiffs demonstrate a legitimate need to depose specific sales representatives. Moreover, because plaintiffs in the *Gertie Campbell* matter have noticed depositions for this upcoming Monday, October 24, defendants respectfully request that the Court decide this motion on an expedited basis.

Dated:  October 21, 2022 		Respectfully submitted,


            <u>s/ John H. Beisner</u>
            John H. Beisner
            Jessica Davidson Miller
            SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
            1440 New York Avenue, N.W.
            Washington, D.C. 20005
            (202) 371-7000

*Counsel for Defendants Medical Device Business Services, Inc., f/k/a DePuy Orthopaedics, Inc., DePuy Synthes Sales, Inc., Johnson & Johnson and Johnson & Johnson Services, Inc.*

## **CERTIFICATE OF SERVICE**

I, John H. Beisner, hereby certify that the foregoing was served on counsel of record through the CM/ECF system on October 21, 2022.

Dated:  October 21, 2022               Respectfully submitted,

                                       s/ John H. Beisner
                                       John H. Beisner
                                       Jessica Davidson Miller
                                       SKADDEN, ARPS, SLATE, MEAGHER &
                                       FLOM LLP
                                       1440 New York Avenue, N.W.
                                       Washington, D.C. 20005
                                       (202) 371-7000

                                       *Counsel for Defendants Medical Device Business Services, Inc., f/k/a DePuy Orthopaedics, Inc., DePuy Synthes Sales, Inc., Johnson & Johnson and Johnson & Johnson Services, Inc.*

**SCHEDULE A**

|     | Last Name   | First Name     | Cause No.        |
| --- | ----------- | -------------- | ---------------- |
| 1.  | Aragon      | Marile         | 3:18-cv-00544-K  |
| 2.  | Baldwin     | Michael        | 3:12-cv-00731-K  |
| 3.  | Brown       | Crystal        | 3:11-cv-02574-K  |
| 4.  | Campbell    | Sherry         | 3:11-cv-01959-K  |
| 5.  | Campbell    | Gertie F.      | 3:11-cv-02957-K  |
| 6.  | Canty       | Richard        | 3:15-cv-00440-K  |
| 7.  | Coblin      | Pollyann       | 3:18-cv-00524-K  |
| 8.  | Getz        | Brenda         | 3:11-cv-02890-K  |
| 9.  | Greenwood   | Cindy          | 3:11-cv-03585-K  |
| 10. | Gulledge    | Linda          | 3:12-cv-03301-K  |
| 11. | Hall        | Sidney         | 3:21-cv-01321-K  |
| 12. | Hill        | Robert         | 3:14-cv-03694-K  |
| 13. | Holland     | Bennie W. Jr.  | 3:13-cv-02935-K  |
| 14. | Hutchinson  | Ernest J. IV   | 3:15-cv-01074-K  |
| 15. | Jozwiak     | Jeremy A.      | 3:14-cv-00365-K  |
| 16. | Martinez    | Terry Lee      | 3:13-cv-03281-K  |
| 17. | Mitchell    | Gerald E.      | 3:14-cv-03867-K  |
| 18. | Nation      | Billy          | 3:12-cv-03369-K  |
| 19. | Near        | Brian K.       | 3:11-cv-01452-K  |
| 20. | O'Connell   | Charles        | 3:12-cv-01480-K  |
| 21. | Olson       | Roger          | 3:18-cv-02413-K  |
| 22. | Ortiz       | Donnie         | 3:11-cv-01597-K  |
| 23. | Sheehy      | Paul           | 3:14-cv-01930-K  |
| 24. | Sterling    | John           | 3:17-cv-00819-K  |
| 25. | Taffurelli  | Kurt           | 3:12-cv-03371-K  |
| 26. | Taybus      | Terry J.       | 3:16-cv-00650-K  |
| 27. | Winegarden  | Ann            | 3:18-cv-00159-K  |
| 28. | Wright      | Warren         | 3:11-cv-02534-K  |
| 29. | Zinn        | Cecelia P.     | 3:17-cv-03166-K  |