IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE:  DEPUY ORTHOPAEDICS, INC., | ) | MDL DOCKET NO. |
| PINNACLE HIP IMPLANT PRODUCTS | ) | 3:11-MD-2244-K |
| LIABILITY LITIGATION | ) | Honorable Ed Kinkeade |
| ------------------------------------------------------- | ) | |
| This Document Relates to: | ) | |
| | ) | |
| GERTIE F. CAMPBELL and | ) | |
| WILLIAM J.CAMPBELL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| VERSUS | ) | Case No. 3:11-CV-02957-K |
| | ) | |
| DEPUY ORTHOPAEDICS, INC., | ) | |
| DEPUY, INC., | ) | |
| JOHNSON & JOHNSON, | ) | |
| JOHNSON & JOHNSON SERVICES, INC., | ) | |
| and | ) | |
| JOHNSON & JOHNSON INTERNATIONAL, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS, GERTIE F. CAMPBELL AND WILLIAM J. CAMPBELL'S, BRIEF IN SUPPORT OF MOTION TO RECUSE AND DISQUALIFY SPECIAL MASTER JAMES M. STANTON

The plaintiffs, Gertie F. Campbell and William J. Campbell, file this Brief in Support of their Motion to Recuse and Disqualify Special Master James M. Stanton.

Plaintiffs assert that Special Master Stanton is disqualified to exercise any discretionary functions or provide any further advice to this Court because Special Master Stanton presided over a compulsory mediation process involving these plaintiffs, and thousands of other plaintiffs, in this MDL.  During this mediation process, Special Master Stanton inevitably had *ex parte* communications with defense counsel about plaintiff and their case.  A

-1-

confidentiality order currently prevents plaintiffs from providing information about what Special Master Stanton said and did during their mediation.

It is unethical for any judicial officer (either a district judge or a magistrate or a special master) who has acted as a mediator in a compulsory mediation process to thereafter perform any discretionary role in the same litigation.  Canon 3(A)(4)(d), *Judicial Code of Conduct*.

On June 3, 2021, this Court ordered all plaintiffs who remained in this MDL to participate in a compulsory mediation process presided over by Special Master Stanton.  [MDL No. 3:11-MD-2244-K, Doc. 1150.] [1]  The Campbells were required to pay $2,000 as their share of the mediator's fee for their case. The Campbells did not consent to participate in this mediation process.  They were not given any choice regarding participation.

Canon 3(A)(4)(d) of the *Judicial Code of Conduct*, states as follows:

> Canon 3: A Judge Should Perform the Duties of the Office Fairly, Impartially and Diligently

> The duties of judicial office take precedence over all other activities. The judge should perform those duties with respect for others, and should not engage in behavior that is harassing, abusive, prejudiced, or biased. The judge should adhere to the following standards:

> *   *   *

> (4) A judge should accord to every person who has a legal interest in a proceeding, and that person's lawyer, the full right to be heard according to law. Except as set out below, a judge should not initiate, permit, or consider ex parte communications or consider other communications concerning a pending or impending matter that are made outside the presence of the parties or their lawyers. If a judge

---

[1] On June 3, 2021, the 148-page "Master Case List in MDL 2244 as of May 31, 2021," [MDL No. 3:11-MD-2244-K, Doc. 1151] was entered on the docket.  It showed that there were a total of 6,039 cases on the docket, including cases that were added as recently as May 26, 2021.

receives an unauthorized ex parte communication bearing on the
substance of a matter, the judge should promptly notify the parties of the
subject matter of the communication and allow the parties an
opportunity to respond, if requested. A judge may:

* * *

(d) with the consent of the parties, confer separately with the
parties and their counsel in an effort to mediate or settle pending
matters.

(Emphasis added.)

See also *Blackmon v. Eaton Corp., 587 Fed. Appx. 925 *; 2014 U.S. App.*
*LEXIS 19915 **; 124 Fair Empl. Prac. Cas. (BNA) 1477; 2014 FED App. 0786N*
*(6th Cir.); 2014 WL 5286623.*  In that case, the Sixth Circuit Court of Appeals

ruled that it was improper for the U.S. District Judge to assign a case to a

Magistrate for a report and recommendation when that Magistrate had

previously presided over a compulsory mediation in the case.

The Honorable James M. Stanton was appointed as Special Master early

in this MDL.  In the appointment Order, the Court authorized the Special

Master to engage in some *ex parte* communications but the Order placed limits

on these *ex parte* communications:

The Special Master may communicate ex parte with any party or his
attorney, as the Special Master deems appropriate, for the purposes of
ensuring the efficient administration and management of this MDL,
including the making of informal suggestions to the parties to facilitate
compliance with Orders of the Court; such ex parte communications
may, for example, address discovery or other procedural issues. Such ex
parte communications shall not, however, address the merits of any
substantive issue, except that, if the parties seek assistance from the
Special Master in resolving a dispute regarding a substantive issue, the
Special Master may engage in ex parte communications with a party or
his attorney regarding the merits of the particular dispute, for the
purpose of mediating or negotiating a resolution of that dispute, only
with the prior permission of those opposing counsel who are pertinent to

the particular dispute. To the extent it may be considered a "substantive issue," the Special Master may engage in ex parte communications with a party or counsel, without first obtaining the prior permission of opposing counsel, to resolve privilege or similar questions and in connection with in camera inspections.

[MDL No. 3:11-MD-2244-K, Doc. 81, at 7, 8, 9; emphasis added.]

MDL Courts generally recognize that some *ex parte* communications involving the Special Master may be necessary as a part of the MDL process, but that such *ex parte* communications must be limited and controlled.

The official comments to *USCS Fed. Rules of Civil Procedure R. 53* provide the following cautionary statements regarding a Special Master and *ex parte* communications:

Ex parte communications between a master and the court present troubling questions. Ordinarily the order [appointing the Special Master] should prohibit such communications, assuring that the parties know where authority is lodged at each step of the proceedings. Prohibiting ex parte communications between master and court also can enhance the role of a settlement master by assuring the parties that settlement can be fostered by confidential revelations that will not be shared with the court. Yet there may be circumstances in which the master's role is enhanced by the opportunity for ex parte communications with the court. A master assigned to help coordinate multiple proceedings, for example, may benefit from off-the-record exchanges with the court about logistical matters. The rule does not directly regulate these matters. It requires only that the court exercise its discretion and address the topic in the order of appointment.

*Similarly difficult questions surround ex parte communications between a master and the parties*. Ex parte communications may be essential in seeking to advance settlement. Ex parte communications also may prove useful in other settings, as with in camera review of documents to resolve privilege questions. In most settings, however, ex parte communications with the parties should be discouraged or prohibited. The rule requires that the court address the topic in the order of appointment.

*Id.* at 10 (emphasis added).

In a context similar to an MDL, the Third Circuit Court of Appeals dealt

with the issue of *ex parte* communications between the U.S. District Court and

the Court's appointed "consulting advisors."  *In re Kensington Int'l., Ltd., 368*

*F.3d 289 \*; 2004 U.S. App. LEXIS 9551 \*\*; Bankr. L. Rep. (CCH) P80, 102.*  In

*Kensington*, two creditors filed emergency petitions asking the Third Circuit to

issue writs of mandamus to prevent a senior district court judge from

continuing to preside over two of five asbestos-related bankruptcies that the

Third Circuit had assigned to the senior district judge for coordinated case

management.  The petitioners asserted that the senior district judge had

created, through the judge's association with the "consulting advisors," a

perception that his impartiality "might reasonably be questioned" under *28*

*USC § 455(a).*[2]

In its opinion, the Third Circuit Court of Appeals stated that removal of

the district judge was required as a result of "the perception of bias" that was

created, in part, by the "taint" of the judge's *ex parte* communications with the

"special advisors."  The Court of Appeals stated:

> E. *The Ex Parte Communications Contributing to Taint*
>
> The extensive *ex parte* communications between Judge Wolin, on the one
> hand, and the Advisors and parties, on the other, further support
> disqualification under *§ 455(a). See United States v. Furst, 886 F.2d 558,*
> *583 (3d Cir. 1989)* (disqualifying judge under *§ 455(a)* because of *ex parte*
> communications). We have previously described <u>*ex parte* communications</u>
> <u>as "anathema in our system of justice</u>." *School Asbestos, 977 F.2d at 789.*
> <u>One leading reason is that *ex parte* meetings are often, as they were here,</u>
> <u>unrecorded. Consequently, there is no official record of what was said</u>

---

[2] A motion to disqualify filed under *28 U.S.C. § 455(a),* unlike a *28 USC § 455(b)(1)* motion, does
not require a supporting affidavit.

during those meetings. Of even greater concern is the argument urged upon us by the Petitioners who, without knowledge of what was discussed at these meetings, contended that they could not respond to these "silent" facts.  As we explained in *City of Pittsburgh v. Simmons, 729 F.2d 953 (3d Cir. 1984)*:

> The record taken by a certified court reporter is always the best evidence of what has been said, what actions have been taken, and what rulings have been made. "Meaningful review requires that the reviewing tribunal must be able to review a decision of a trial court . . . to determine its correctness and if necessary control the course of the litigation whether by appeal or by use of a writ . . . ." *Wood v. Zapata Corp., 482 F.2d 350, 358 (3d Cir. 1973)* (Biggs, J., dissenting). Without a record of the proceedings "we are left with conflicting statements of counsel which cannot be reconciled and, in any event, are not part of the record and therefore cannot serve as a basis for adjudication." *Id.*
>
> . . . Indeed, the best protection for the litigants, the bar, and the bench at trial and on appeal is a verbatim record. Rather than having to speculate upon  what was said and the manner in which an argument was made, the court then has before it, when a record is taken, the exact words of counsel and the exact words and rulings of the court. Thus, there is no need for characterization in affidavits or for reconstruction at a later date of what the parties or court thought each said or meant or what each intended.

*Id. at 955-56.*

The other problem is that *ex parte* communications run contrary to our adversarial trial system. The adversary process plays an indispensable role in our system of justice because a debate between adversaries is often essential to the truth-seeking function of trials. *See Polk County v. Dodson, 454 U.S. 312, 318, 70 L. Ed. 2d 509, 102 S. Ct. 445 (1981)* ("The system assumes that adversarial testing will ultimately advance the public interest in truth and fairness"). If judges engage in *ex parte* conversations with the parties or outside experts, the adversary process is not allowed to function properly and there is an increased risk of an incorrect result.

Attuned to that concern, the Code of Conduct for United States Judges cautions that a judge should "neither initiate nor consider *ex parte* communications on the merits, or procedures affecting the merits, of a pending or impending proceeding." Code of Conduct for U.S. Judges Canon 3 § A(4) (2003). The rule is designed to prevent all of the evils of *ex*

*parte* communications: "bias, prejudice, coercion, and exploitation." Jeffrey M. Shaman et al., *Judicial Conduct and Ethics* § 5.03 (3d ed. 2000). <u>The Code provides for only two narrow exceptions</u>. <u>First</u>, "[a] judge may . . . obtain the advice of a <u>disinterested expert</u> on the law applicable to a proceeding before the judge <u>if the judge gives notice to the parties of the person consulted and the substance of the advice, and affords the parties reasonable opportunity to respond</u>." Code of Conduct for U.S. Judges Canon 3 § A(4) (2003). <u>Second, "[a] judge may, with consent of the parties,</u> confer separately with the parties and their counsel <u>in an effort to mediate</u> or settle pending matters." *Id.*

\*   \*   \*

We have previously discussed the distinction between our holding, <u>that conflicted advisors who participate or influence a judge requires the judge's disqualification, as distinct from an expert or other assistant to the judge who is disinterested and non-conflicted</u>. It should be understood that we do not hold that a judge may not or should not have *ex parte* meetings or communications with the parties or their counsel appearing before him.  However, <u>the hallmark of such meetings or communications requires the consent of the parties</u>. We have pointed out in this section that the Code of Conduct for United States Judges <u>proscribes *ex parte* communications except</u> where the judge has entered into them <u>with the consent of all the parties</u>.

*Id.* at 27-29 (emphasis added).

In considering the application of statements in the *Kensington* opinion to the facts in this case, it is important to note that Special Master Stanton was not "disinterested" when and if he gave any advice or input to the Court in regard to this Court's decision to retain jurisdiction.  That decision directly benefitted Special Master Stanton financially because it resulted in his ongoing employment in this case.  Thus, he was "interested and conflicted" regarding the remand issue and any communications *ex parte* between Special Master Stanton and the Court on that subject were prohibited by the *Judicial Code of Conduct*, Canon 3 § A(4).  Again, the Campbells do not have any direct evidence at this

-7-

time that such communications actually occurred.   That lack of evidence, however, is not their fault.  They have been diligent in trying to discover the facts about what led this Court to retain case-specific jurisdiction in the face of its previously announced decision that it should not do so.

The Campbells, along with other plaintiffs, have formally requested that this Court provide transparency regarding the communications and the process that led to the Court's "change of mind."  Thus far, this Court has chosen to remain silent.  In addition, the plaintiffs have served pending discovery requests on defendants seeking information regarding any *ex parte* communications they had with Special Master Stanton regarding this issue.[3]  Finally, the plaintiffs are filing a contemporaneous motion asking this Court to unseal the monthly statements filed by Special Master Stanton so that they can discover what those records show regarding *ex parte* communications.

Special Master Stanton's numerous interactions with counsel in this matter over a decade and this has apparently enlarged his understanding about his right to engage in *ex parte* communications.  During an "emergency hearing" on defendants' motion for a protective order (October 23, 2022), Special Master Stanton stated *sua sponte* as follows: "… I'm a special master, I've got a bunch of different roles and I can administratively talk to the parties, I can substantively talk to the parties and I look forward to doing that, Mr. Jones, if you would like to have a followup call on how you can do the best job for the Campbells while

---

[3] See Appendix for discovery requests plaintiffs served on defendants.

making sure that the Defendants have to produce the witnesses that need to be produced." [Campbell No. 3:11-CV-02957-K, Doc. 39, p. 28; emphasis added.]

Beyond the "anathema" of "*ex parte* communications," other ethical problems exist whenever a judicial officer who presided over a mandatory settlement conference thereafter resumes a decisional role in the case. These problems are described and analyzed by Professor Deason in her article *Beyond "Managerial Judges": Appropriate Roles in Settlement*, 2017, 78 Ohio St. L.J. 73, Author: Ellen E. Deason. She wrote:

> There can also be an important link between actions a judge takes in her pretrial management role--whether for the purpose of encouraging settlement or not--and a perception of coercion to settle. Tight scheduling timetables or the timing of decisions on pretrial motions are often interpreted as ways to increase pressure to settle. Preliminary rulings can increase or decrease uncertainty in ways designed to encourage settlement. Prospective decisions that rest with the court's discretion and are of great importance to the lawyers--ranging from class certification to discovery decisions to admissibility of expert testimony--give the judge subtle and implicit leverage over the lawyers, who want the judge to view them as reasonable and cooperative. Using judicial decisions to create motivation to settle can be abused, or perceived to be abused, by a judge who is enthusiastically promoting settlement.

*Id.* at pp. 111-112 (footnotes omitted; emphasis added).

> … A mediator is also likely to become privy to parties' strategies, priorities, and trade-offs as she discusses their bargaining concessions. Moreover, in the course of these discussions she is bound to gain an impression of each party's degree of cooperation and willingness to settle. Perhaps most significantly, the discussion is likely to cover extensively the attorneys' assessments of their cases: their view of the most likely outcome, the litigation cost, and the bottom line for reaching an agreement. Indeed, it "would be difficult . . . to conduct a settlement conference without at some point dealing with the issue of value." The key point is that exposure during settlement to the parties, to their strategies, and to the settlement value of a case go far beyond what judges usually learn in their adjudicatory and managerial roles.

*Id.* at p. 116 (footnotes omitted).

> … [T]he [2007 ABA] Model Code [of Judicial Conduct] prohibits, as a general matter, ex parte communications concerning pending matters. But there is an explicit exception for judges, "with the consent of the parties," to "confer separately with the parties and their lawyers in an effort to settle matters pending before the judge."
>
> The current official Code of Conduct for United States Judges, adopted by the Judicial Conference of the United States, has an almost identical provision. Canon 3 prohibits ex parte communications on the merits in pending matters but has a similar exception, which provides that a judge may "with the consent of the parties, confer separately with the parties and their counsel in an effort to mediate or settle pending matters."

*Id.* at pp. 129-130 (footnotes omitted; emphasis added).

The bottom line to all this is the following:  Once a judicial officer has presided over a compulsory mediation process, it is unethical for that judicial officer to resume any discretionary role in that same case.  If the judicial officer does so, the party who refused to settle at mediation in accordance with the judicial officer's recommendations has every right and reason to perceive that the judicial officer is likely to be biased against that party as a result.  A reasonable "perception of bias" always arises when the judicial officer unabashedly acts in a way that Canon 3(A)(4)(d) labels as "unethical."  This is the situation that now exists in this MDL.  Special Master Stanton's conflicting roles are irreconcilable and this situation cannot be fixed except by the removal and disqualification of Special Master Stanton.

Plaintiffs may need to supplement and enlarge their Motion to Recuse and Disqualify and/or to file an additional motion if and when:  (1) defendants respond to plaintiffs' outstanding discovery regarding *ex parte*

communications, and/or (2) this Court unseals Special Master Stanton's

monthly reports, and/or (3) this Court provides "transparency."

      Respectfully submitted,

<div style="margin-left:40%">

LAW OFFICE OF JON E. JONES

By:   /s/ Jon E. Jones
        Jon E. Jones, BPR #2848
        345 S. Jefferson Avenue, Suite 400
        Cookeville, TN  38501
        (931) 372-8771 – phone
        (931) 372-8992 – fax

CALLAHAN & BINKLEY, PLC

By:   /s/ Patrick Shea Callahan
        Patrick Shea Callahan, BPR #29086
        321 East Spring Street, Suite 304
        Cookeville, TN  38501
        (931) 650-3322 – phone
        (931) 650-3964 – fax

Attorneys for Plaintiffs

</div>

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that on November 15, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this action.

<div style="margin-left:40%">

LAW OFFICE OF JON E. JONES

By: /s/ Jon E. Jones

</div>